### Cudahy Packing Company v. Altsheler & Company.

(Decided November 27, 1923.

Appeal from Jefferson Circuit Court
(Common Pleas Branch, Fourth Division).

Sales—Price of Goods Held Not Measure of Damages for Breach of Seller's Contract to Aid in Resale.—Where packing company sold canned meats, but broke agreement to furnish specialty sales-men to dispose of the goods for the buyer, the correct measure of damages was not the contract price of the goods which buyer was unable to sell, but the difference between the contract price and the market value at the time of the purchase when not entirely worthless.

WM. MARSHALL BULLITT, BRUCE, BULLITT & GORDON and JOSEPH S. LAURENT for appellant.

EUGENE R. ATTKISSON for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment for $2,997.00 for breach of contract. The facts as pleaded and proved by Altsheler & Company are as follows: On January 16, 1920, Altsheler & Company gave to the Cudahy Packing Company an order for 2,270 cases of canned meat specialties of assorted brands, for which it paid the sum of $8,326.75. As a part of the contract of purchase the Cudahy Packing Company agreed to furnish specialty salesmen and specialty service sufficient to dispose of the entire shipment of goods within a reasonable time. It was further agreed that such specialty salesmen should sell only the goods which Altsheler & Company purchased and had on hand, and would not take orders for overages or other goods than those which Altsheler & Company had in stock. A short time after the purchase of the goods, Cudahy Packing Company discontinued its specialty work and withdrew the assistance of its specialty

salesmen, and as a result thereof, Altsheler & Company were "stuck" and had on hands goods amounting to $2,997.00, the purchase price thereof. Altsheler & Company made diligent efforts to dispose of the goods, but was unable to do so. The goods were worthless to it and were tendered to the Cudahy Packing Company. On the other hand, the Cudahy Packing Company claimed that its agreement extended no further than to furnish sufficient specialty salesmen to educate Altsheler & Company salesmen in the advertisement, demonstration and sale of the goods and that it performed this service at an expense of $2,000.00, and was ready and willing to continue the service but Altsheler & Company declined to permit it to do so.

It is practically conceded that the evidence as to the terms and breach of the contract was such as to take the case to the jury, but earnestly insisted that the instruction on the measure of damages was incorrect. The instruction is as follows:

"If you find for the plaintiff, you will award to it such sum in damages as you may believe from the evidence represents the contract price at the time of the purchase, of such of said merchandise as you may believe from the evidence remains unsold, your whole award, however, not to exceed the sum of $2,997.00, the amount claimed in the petition, and you may or may not, in your discretion, as seems to you just and proper from all the evidence and foregoing instructions, award plaintiff interest on the sum so found for it, from the 28th day of March, 1921."

The argument in support of the instruction is that the parties necessarily contemplated that if the Cudahy Packing Company did not sell the goods as agreed, Altsheler & Company would have on hand goods that were worthless and would therefore sustain a loss equal to the purchase price of the goods. There might be some merit in this position if the evidence had shown conclusively that the goods remaining unsold had no value whatever. The only witness who testified on this question was Mr. Yancey Altsheler, and his evidence is as follows:

"Q. I will ask you if you made every—what effort you made to sell and dispose of that goods? A. I wrote the salesmen and on numerous occasions sent them samples and told them to get on them and to write for samples if they could use them. I used every possible means to sell the goods. Q. I will ask you if you could

sell them—if you could sell these goods or did sell them? Were you able to sell them through your salesmen? A. No, sir, we were not, except for one item, the last item in the—stated in the petition, which is really not a specialty. We did sell one item out of this list. Q. Is that the deviled meat? A. Yes, sir; to the amount of $90.00. Q. I will ask you to state why you were unable to sell them? A. Because the assistance of the specialty salesmen was withdrawn. Q. Is that the same goods they agreed to sell and dispose of for you? A. It is. Q. I will ask you if you still have those goods on hand? Do you still have them on hand? A. Yes, sir, we do. Q. State whether it is live stock or dead stock that you are unable to sell? A. It is canned meats. Q. Does it have any value? A. No value to us, sir, because we can't sell them. Q. I will ask you whether or not that is a total loss to you? A. At present it is."

This evidence goes no further than to show that the goods were of no value to Altsheler & Company because it could not dispose of them. It is not sufficient to justify the conclusion that the goods were entirely worthless and could not be sold at any price whatever. It not being shown that the goods were entirely worthless, we have reached the conclusion that the correct measure of damages was not the contract price, but the difference between the contract price and the market value of the goods at the time of the breach, and so the court should have instructed the jury.

We find no other error in the record.

Judgment reversed and cause remanded for new trial consistent with this opinion.